| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:13-CR-200(4) |
| | § | |
| GILBERTO JESUS MORALES | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Gilberto Jesus Morales's ("Morales") Motion for Modification of Sentence for Extraordinary and Compelling Reasons (#1413), wherein he requests that the court modify his sentence of imprisonment to time served pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion, and after conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Also pending before the court is Morales's Motion to Appoint Counsel (#1415). Having considered the motions, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.      Background

On October 8, 2014, a federal grand jury in the Eastern District of Texas returned a Third Superseding Indictment charging Morales and 26 others in Count I with Conspiracy to Possess With Intent to Distribute Heroin, in violation of 21 U.S.C. § 846. On December 15, 2015, Morales pleaded guilty to the offense pursuant to a non-binding plea agreement. On April 19, 2016, the court sentenced Morales to 360 months' imprisonment, followed by a 5-year term of supervised release. Morales is currently housed at the Medical Center for Federal Prisoners

Springfield, located in Springfield, Missouri ("MCFP Springfield").  His projected release date is April 23, 2039.

## II.    Appointment of Counsel

Morales requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).

The court, however, may, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See  United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court.").

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must

demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Morales is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582.  *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.").  Moreover, Morales provides no basis for the court to conclude that the appointment of counsel would help him obtain relief.  A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).  In any event, Morales has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel.  Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").  Accordingly, Morales's motion for appointment of counsel is denied.

III.   <u>Compassionate Release</u>

Morales also requests that the court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18

U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release.").  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative

exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, No. 20-5000, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In his motion, Morales claims that he submitted a request for compassionate release to the warden of his facility, which was denied on February 22, 2020.  Morales, however, does not provide any support for his contention.  The Government asserts that the BOP does not have a record of receiving a reduction in sentence request under 18 U.S.C. § 3582(c)(1)(A) related to COVID-19.  Probation's investigation revealed that Morales made a request to the warden of MCFP Springfield on non-COVID-19 related grounds on November 13, 2019, which was denied

on December 16, 2019.  Morales appealed that denial by way of an "Administrative Remedy," which was denied by the central office of the BOP on June 22, 2020.  Because that request was not related to COVID-19, the basis for Morales's current motion, Morales's 2019 request cannot satisfy the administrative exhaustion requirement.  Further, the court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period.  *See Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").  Therefore, Morales is foreclosed from obtaining relief based on his failure to exhaust his administrative remedies.

Moreover, even if Morales had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to

modify his term of imprisonment.  Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

In the instant motion, Morales contends that he is eligible for compassionate release due to his medical conditions, which include diabetes, kidney disease that requires dialysis, amputation of the toes of both feet, heart issues that necessitated double bypass surgery, legal blindness, and a back injury.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, Morales's Presentence Investigation Report ("PSR"), prepared in 2016, reveals that Morales informed Probation that he was diagnosed with diabetes at age 20 but ignored his condition for years until he began experiencing complications at age 25.  He indicated that he has high blood pressure that resulted in kidney failure in the early 2000s and has been on dialysis three times per week since that time.  His dialysis-dependency has led to other complications, including carpel tunnel syndrome at the dialysis vascular access site and chronic back pain.  Further, Morales has been legally blind since the early 2000s, with no vision in one eye and minimal vision in the other.  At the time of his conviction, Morales was taking various medications, including prescriptions to treat high blood pressure, pain, heart problems, digestive issues, and dialysis-related problems.   Hence, Morales's medical afflictions did not hamper or prevent him from

committing the offense of conviction from 2010 to 2014.  Thus, he was capable of committing

serious criminal offenses while suffering from the same conditions he has today.

Probation's investigation confirms that Morales continues to suffer from the ailments

mentioned in his PSR. The Reduction in Sentence Coordinator at MCFP Springfield, a licensed

clinical social worker, noted:

> Mr. Morales applied for Reduction in Sentence (RIS) in November 2019 under
> debilitated criteria.  His medical provider offered the information that Mr. Morales
> carries several medical diagnoses, to include dialysis dependent chronic kidney
> disease, diabetes, hypertension, and coronary artery disease.  He is compliant with
> his treatment and responding well to treatment and medication.  Mr. Morales is
> independent around the institution, with the exception of using a wheelchair, at
> times, for assistance with mobility.

Further, the Medical Officer at MCFP Springfield, Dr. Scott R. Moose, M.D., provided

written documentation stating the following:

> This 41 year-old inmate has applied for reduction in sentence (RIS) for debilitating
> medical condition(s).  Last RIS application date: November 2019.
>
> Primary history includes:
> 1) Dialysis dependent [chronic kidney disease ("CKD")] since 2005, secondary to
> diabetes and hypertension history.  He dialyzes 3x/week with a permanent access;
> seen monthly by Nephrologist.
> 2) Diabetes: no longer requires meds secondary to his CKD increasing insulin half-
> life.  He has bilateral retinopathy: blind on left and with poor vision on right.  He's
> had transmetatarsal amputation secondary to peripheral vascular disease in 2006
> and is on life-time anticoagulants for this.  He uses a manual wheelchair to get
> around the institution.
> 3) Hypertension: well-controlled on no meds, sometimes becomes hypotensive so
> takes midodrine when needed.
> 4) Coronary artery disease with 2016 two-vessel coronary bypass: no sequelae.
> 5) Back pain: L3-4 laminectomy/decompression done in 2018.  ~50 pound weight
> loss has helped as well.
>
> He needs no assistance with [activities of daily living], he has very limited vision,
> but he is very familiar with the institution and is able to get around with his
> wheelchair.  He makes it to Mainline for meals with no problems; friends help him
> navigate, if needed.  This medical history suggests this patient may have steeper

than average end-of-life trajectory.  Average life-expectancy prediction remains greater than 18 months.

This medical summary does not meet the criteria listed above.  None of these medical conditions is terminal (with an end of life trajectory within 18 months) or substantially diminishes his ability to provide self-care.  Although he depends primarily on his wheelchair to get around, he is quite familiar with the facility, enabling him to perform the activities of daily living and provide self-care with minimal or no assistance.  Hence, Morales has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.  Even if Morales's medical condition were to constitute an extraordinary and compelling reason under § 3582(c)(1)(A), "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  Where, as here, Morales has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence.  *Id.* at 693-94.

In this situation, granting Morales compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence.  *Id.* at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the

10

§ 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, releasing Morales after serving only 83 months (approximately 23%), of his 360-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

Morales's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Morales for any reason. It is well settled that "compassionate release is

discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Morales's situation.

Morales maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Morales expresses concern regarding the spread of COVID-19 among the prison population. Nevertheless, as of September 9, 2020, the figures available at www.bop.gov list 2 inmates and 1 staff member at MCFP Springfield who have confirmed positive cases of COVID-19, 4 inmates and 6 staff members who have recovered, and no inmates who have succumbed to the disease. Although Morales expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Morales, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *Vasquez*, 2020 WL 3000709, at *3 ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by

the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19). Under these circumstances, Morales has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served and warrant his release from imprisonment.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Morales's conviction stems from a heroin trafficking conspiracy in which he held a managerial role. From at least 2010 until 2014, Morales was involved in a scheme to import and traffic large amounts of heroin from Guanajuanto, Mexico, to the United States. The heroin was transported through the use of heavy-set women, known as body carriers, who concealed the heroin in their bras. The body carriers included Morales's wife and his niece. After reaching the Dallas, Texas, area, the heroin was distributed to mid- and low-level sellers. Morales was involved in recruiting the body carriers and was solely responsible for supervising their activities with respect to bringing heroin across the border from Mexico into the United States. He also distributed heroin

in the Dallas area, relying on his wife to drive him wherever he needed to go, including to and from drug transactions, due to his vision problem. Morales purchased heroin directly from codefendant Maria Guadalupe Mendoza Villegas, one of the primary suppliers of the drug trafficking organization. Morales was held responsible in this case for 96 kilograms of heroin transported by the body carriers and 8.9 kilograms of heroin obtained from Villegas.

Morales's criminal history includes prior convictions for theft (2), prostitution (2), burglary of a vehicle, assault, and debit card abuse. His probation was revoked on three occasions. Morales also has a history of poly-substance abuse, including daily marijuana use since age 14, weekly cocaine use since age 21 that later turned to daily use, alcohol use since age 17 that became daily use, and hydrocodone use, to which he was addicted for a year until his arrest at age 35. In view of the nature and circumstances of his offense of conviction and his poly-substance abuse, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 7,650 inmates on home confinement.

14

The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Morales's track record is similarly a poor one.

In short, Morales has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 2020 WL 1940570, at *4-5 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 2020 WL 1940570, at *5.

IV.    Conclusion

Consistent with the foregoing analysis, Morales's Motion for Modification of Sentence for Extraordinary and Compelling Reasons (#1413) and Motion to Appoint Counsel (#1415) are DENIED.

SIGNED at Beaumont, Texas, this 11th day of September, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

16